Good morning, Your Honors. May it please the Court. Edward Zas, Federal Defenders of New York, committed reversible error by subjecting Mr. Deloatch, over a timely objection, to a two-level guidelines enhancement for a threat of death that was made not by him but by a co-defendant. The Court erred in two separate ways. First, the Court failed to make the necessary particularized finding that the co-defendant Gordon's spur-of-the-moment death threat was foreseeable to Deloatch. The Court merely found that, quote, human contact, close quote, was foreseeable. But that finding is not enough to support the enhancement. Second, there's no evidence in the record to support the necessary finding, even if it had been made. The plan here was an after-hours burglary of a clothing store that appeared to be empty. The men went around 3.30 in the morning, wearing safety vests and setting out cones so it would look like they belonged there. They were unarmed. They did that because they expected that there might be people on the scene, whether in the store or out on the street? That was the basis for the judge's finding, that the presence of human beings was foreseeable, which we're not challenging is clearly erroneous. Right. And but given that it was foreseeable that there would be people there, and given the nature of the crime, a violent robbery, right, they smashed the door, the glass, why wasn't it foreseeable that there would be a death threat made? Your Honor, this Court's cases require case-specific inquiry into whether a particular threat, threat of death, was reasonably foreseeable. The mere fact that people could be anticipated, something that's true of every Hobbs Act robbery, because by definition, you have to be taking property either from the person or in the presence of another person. Is case-specific related to the circumstances of the case? So is the trial judge supposed to ignore the circumstances of how this robbery was set up by setting up the cones and the construction vests they were? When you say case-specific, how is the fact that the cones were put out there and they were construction vests not case-specific? They absolutely were. That's not, I'm not disputing that that's case-specific. My larger point was it can't be that a threat of death is inherent in every robbery, because if that were true… Also, does robbery involve four or five guys, four or five assailants? Yes, correct. So you have a group, a larger group. There is violence used. Again, the smashing of the window, the expectation that there might be… Why isn't that enough to support a finding that it was reasonably foreseeable, that there would be a threat of a death? Because the Court needs to look at what my client in particular knew at the time that… He knew all of those things, right? We don't know that. We know that he… He knew that there were four guys or five guys involved. That's true. He knew that there was planning. He knew that they had to break into the place. He knew all of that, right? That's true. That's true. What's the standard of review here? It depends on which area you're focused on. Well, on whether it was the finding that was reasonably foreseeable. Is it not a clear error standard? If you determined that the Court made an adequate finding that a death threat was foreseeable, which we dispute, but if you say, no, it's there, you would review that under Equinox holding for clear error only. But if we step back and the question of whether there is a particularized finding that's sufficient for you to review, that's a question of law that you would review de novo. And the Court didn't find… But he did make the bottom line finding, and normally we don't have to, right? I mean, he recites all the facts and says, given the cones and given the vests and given this, I find it reasonably foreseeable. That's pretty darn particularized. And it seems to me that he went beyond that and he said, and it was particularly foreseeable that there would be people there. I mean, I guess I'm trying to understand exactly how many words do you insist that a judge say out loud? It seems pretty obvious to us, and to me at least, what the judge was communicating. Because I always thought that the thing about particularized findings is the judge providing enough detail that allows the appellate court to understand, of course, and the public to understand what his reasoning was, so that then we, as an appellate court, can review it, whether the judge was right or wrong. I get what he said, but do you think that there's a different meaning to particularized findings? What, in your mind, makes something sufficiently particularized? So let's take it kind of slowly. Normally, when a judge says, I find that the requirements for the enhancement have been met, that would be enough. But in this particular context, the court has held over and over again that there needs to be particularized finding on each of the relevant components.  So what do you mean by particular? Conceptually, don't tell me about what was missing here. Yes, the court has to say that I'm finding that a- Your point is, he didn't say, I find that a death threat was foreseeable. He only said that I find that it was foreseeable that they would deal with human beings. That's correct. But let's say you disagree and say that if you read everything and you kind of give the judge the benefit of the doubt and you overlook- I mean, he applied the guideline. It's kind of implicit. I mean, we're not wondering that, you know, he was abstractly, randomly making observations that I think it was foreseeable people were on the street. By the way, that's apropos of nothing. I mean, it's pretty obvious. The only reason he's saying that is because everyone is arguing about whether a death threat is reasonably foreseeable. So let's- You don't dispute that that's why he was making that finding, to justify the application of the death threat. I only know what he said, Your Honor. And what he said- All I know is do you actually think he was saying that for some other random purpose?  He's saying it because he's under the erroneous impression that if human beings were foreseeable, then it follows that a death threat was foreseeable. But that can't be right. That's never been the test. Everyone would get a death threat if there was a death threat that was foreseeable just because people were there. Can I ask you a slightly different question here? Yeah. It's more of a conceptual one. What's the latest moment in time when we measure whether a death threat or some other offense-level enhancement has to be reasonably foreseeable? Does it have to be before they leave whatever their muster point is, before they all get in the car and go? Is that- What moment in time, in your view- Great question. So I think I would look to the Supreme Court's decision in Rosemond, which wasn't about this, but it was about 924C, aiding and abetting liability. And I think the answer is it has to be early enough where the defendant could have withdrawn, could have safely done something. And just to get back to the facts here, it's important to remember that there's no evidence that this was planned as a robbery. This was planned as a burglary. That's why there's no weapons. That's why it's so late. They're dressing up with the cones to avoid any confrontation. Because they expected that there would be people in this location, and that is why. In fact, the person who called it in was somebody sitting across the street, apparently, in a car. So getting to the question of the earliest point is when it's still safe to retreat. Going with wire cutters, that's what they used, right? They used a metal instrument to break the store window. Is it unforeseeable that an instrument like that, or going into a store where there's metal racks presumably to hold up the clothing store, right, and shoes, that there might be something there that could be used as a potential weapon? Why isn't that enough to know that if one of my co-conspirators is armed with a metal instrument that's strong enough to break through a glass window, why is that not enough? I think it proves too much. I think there's always going to be a possibility that someone is going to use some object at the location or that they bring to apply some force. But the question is what did Deloach know or foresee about any of this? No, no, no. It's not what he foresaw. It's whether it's reasonably foreseeable. Correct. Because that's subjecting a subjective element. Now, obviously, if he foresaw it and actually subjectively planned it as irrational as it might have turned out to be, then he would be tagged with it, right, because he'd be part of the enterprise. But the question is not did they agree to this. The question is not did he foresee it. It's whether it was reasonably foreseeable. I just want to make sure we're in agreement on that. You are. Okay. You are correct. Well, you've reserved two minutes. We're going to come back to you, Mr. Zask. We look forward to seeing you again. Thank you, Joe. As always. Thank you. Now, why don't we hear from the government? Mr. Weintraub? Your Honors, and may it please the Court, Assistant United States Attorney Benjamin Weintraub for the United States. The Court should affirm the defendant Appellant Marcus DeLoach's sentence in its entirety. The District Court did not abuse its discretion in applying the threat of death enhancement under Sentencing Guidelines Section 2B3.1b2f. The District Court made a particularized finding that the threat of death was reasonably foreseeable given the circumstances of the robbery, and the District Court did not err much less plainly or clearly in making that finding. The appellant and his co-conspirators wore construction vests, a set of construction cones outside the storefront during the robbery. The District Court did not abuse its discretion in concluding, based on those facts, that the defendant and his co-conspirators in fact anticipated interacting with civilians during the course of the robbery. I'm sorry. Abuse its discretion? You're kind of giving a favor to the other side, right? That's a much less deferential standard than clear error. Are you saying abuse of discretion is our standard of review? In the articulation of the abuse of discretion standard here, it bakes in clear error. Okay. Well, then you got it right.  So it's clear error. Well, this part, I mean, you can say that abuse of discretion is sort of always your umbrella. Facts are reviewed for clear error. Legal, pure legal issues are reviewed de novo. But I would have thought that your argument is that what we're fussing about now, whether X was reasonably perceivable to the defendant, was a factual finding. And I think the opponent admitted it's reviewable for clear error. Yes, that is the government's position. I guess whether the factual finding is subject to clear error, but whether to impose the enhancement is abuse of discretion. Is that what you're saying? Whether to impose the — once you make the finding, you don't have to impose the enhancement, or the court doesn't have to, right? Yes, Your Honor. Yes. Is that right? If you make a finding that something's reasonable perceivable, you can say, you know what? It satisfies all the standards of the sentencing guidelines, but I'm not going to apply it. That would be an abuse of discretion. Okay. Fair. But in this case, the court did make a sufficiently — I thought we were pretty clear in Gahagan that when you're talking about reasonable foreseeability, whether something is reasonably foreseeable, it's clear error, period. I didn't know that there were glosses on that. The court — I think it is clear error is the standard, and the court did not commit clear error here. The argument is the court said, I find that it's reasonably foreseeable that other people would be involved. The court did not say, I find that it's reasonably foreseeable that a death threat would be made. How do you respond to that? The only argument that was made by the defendant in the district court with respect to this enhancement was that he and his co-conspirators did not or could not or did not foresee interacting with anybody. So the judge — But the argument — that argument is being made now, so I'm asking you to respond. The district judge didn't explicitly say, I find that it is reasonably foreseeable that a death threat would be made. Again, I think that goes to Judge Nardini's point, which is how much is a district court judge supposed to say or must the district court judge say when addressing an objection raised by the defendant? Here, the district court addressed in some detail the only basis for the objection raised by the defendant in the court below. So you're saying because the court's statements were made in response to and in the context of the defendant raising an objection to the application of the enhancement, which is based on the foreseeability of a threat of death, that that naturally, even though the judge didn't use — they anticipated people, and so it would be foreseeable that not only they'd run into people, but that there might be a threat of death. You're saying that even though the judge didn't use those words, it's in the context of the application of that enhancement, and so it's implicit or inferred that that's what the judge is talking about? Yes, precisely, Your Honor. That's the only reasonable conclusion to draw from why the judge is talking about those specific facts at that time. It's in specific response to when counsel for Mr. Deloach said, we have to take up the issue of the threat of death enhancement, and then Judge Vitaleano in response says, yes, and then speaks about the construction vests and the cones. The defendant argues that if we agree, then it would seem that any time a robbery-involved, contemplated other people would be there, that the death threat enhancement would apply, and that that seems like an overbroad result. How do you respond to that argument? I'd like to respond in two ways. First, it is not the case that every robbery involves foreseeing an interaction with another person. So though every Hobbs Act robbery, once it is completed, will have — You don't mean robbery. You mean burglary. Well, precisely, Your Honor. Because robbery is taking something by force. So that's a harder — you know, this was a burglary that turned into a robbery, right? Precisely, Your Honor. So what I mean to say is that, yes, this turned into a robbery, but one could foresee and plan a burglary. Yeah, but would you go back to Judge Chin's question? Because I get the whole idea. I might think I'm going into an empty building, but I thought the question on the table was, are you saying every robbery, every Hobbs Act robbery, and this is what your opponent said, if you follow your logic, will necessarily pose at least a reasonable foreseeability of death threats? So I think that the court can tack a somewhat narrower path here, which is to say that in all cases in which there is some evidence in the record that the defendant or his co-conspirators in fact foresaw interacting with other people during the course of the robbery, then it is or could be, yes, reasonably foreseeable that a threat of death may be made. I think that is a somewhat narrower position than to say in every single robbery that ultimately becomes a robbery, even those that might have begun and been planned as a burglary. But even so, there's support in the commentary for the position that every Hobbs Act robbery, if in fact a threat of death is made, then that threat of death would have been reasonably foreseeable, and that's Application Note 3D to Section 1.3. And if you look at Zelaya, which is the Ninth Circuit court case that the defendant relies on heavily, the dissent by Judge Kleinfeld makes that argument entirely. Judge Kleinfeld there says the application note, which states that even if participants in a robbery take care to communicate to their other co-conspirators not to use force or violence, that the use of force is reasonably foreseeable given the nature of the crime. So applying that to the threat of death enhancement, Judge Kleinfeld, in a dissent, said that that is the same analogy here. Even if you take steps to prevent against the threat of death, it is reasonably foreseeable. But more to the point here, the Court doesn't need to make a sweeping statement on the law here because Judge Vitaleano did not clearly err in applying the threat of death enhancement here given the particularized facts at issue in this case and the findings that the Court made. Okay. Thank you, Your Honors. Thank you. We have your argument. Mr. Zask, you've got two more minutes in the likeness. Your Honors, I may talk fast. Almost everything the government said was wrong. So let me try to straighten things out. First on the standard of review, there's two options, clearly erroneous or de novo. That's what we're talking about. If the judge had made the actual finding, you say that's close enough to death being foreseeable. It's still not adequate because you need to know what's the basis for that finding. Is it what Judge Kahn said because there's bolt cutters and someone could grab something? Is it some other reason? We have no idea. That's the point of requiring a particularized finding. Just for clarity, our view is that this should all be de novo for the reasons Judge Newman said. We're talking about reasonable foreseeability. That's not a fact. I know. That's water under the bridge, right? It may be. We could have a discussion of whether Aquana was victim or holden. You can ask us to go on bond if you want. I may. But let's assume it's clearly erroneous. There has to be some evidence in the record to support the finding. What evidence is there that Marcus Deloach, who thinks he's going in for an unarmed burglary, knows, suspects, could foresee that this other guy with no weapon on him is going to threaten to kill someone? Let me just try to expose the breadth of what the government is asking you to rule. There's always going to be people in a Hobbs Act robbery. Okay? What if a co-defendant has a gun, which has several enhancements in the same provision? Well, that's foreseeable, according to the government, right? Because he might or could grab a different kind of weapon or might threaten someone. Sure, those are all possible, but the guidelines are not about possibility. They're about reasonable foreseeability. And the Court, Your Honor's opinion for the Court in Gahagan, makes this point explicitly that the duty of the district court is to engage in case-specific inquiry. What did they talk about? What did they know? Where did they meet? What kind of weapons, if any, were there? All of that is missing. This is just people were there. Ergo, a death threat was foreseeable. So the Court should not accept that, given that it increased the guideline range and the government even doesn't say it's harmless. Thank you very much. Okay. Thank you both. Very helpful arguments. We appreciate it. We will take the case under advisement.